In the Matter of the Claim of STELLA DE TURA, Appellant, against EASTERN MEAT MARKETS, INC., et al., Respondents. WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, May 8, 1957.

*David M. Palley* and *Nathan B. Kogan* for appellant.

*John H. Roberts* for Eastern Meat Markets, Inc., and another, respondents.

*Louis J. Lefkowitz, Attorney-General,* for Workmen's Compensation Board, respondent.

BERGAN, J. Pemphigus is a disease of the skin. It is established without medical controversy that it is often found in butchers and in other persons, such as trappers, who handle dead animals.

It is assumed by medical writers that the unidentified organism that causes it gains entry to the blood stream by some break in the skin, but its etiology is not known.

It has mild and acute forms, called respectively " vulgaris " and " acutus ". There is, however, fairly persuasive proof in this record that the two forms may not be separate disease entities, but aspects of the same disease influenced by factors of virulence not clearly demonstrated, and, perhaps, in some instances of the supposed acute form, may be due to other causes or organisms than those attributable to pemphigus. In some cases the disease is overcome; in others, it results in grave generalized illness and death.

The claim here has been dismissed by the board. The claimant's husband was a butcher for a long period of time. There

is overwhelmingly strong evidence that he died of pemphigus. It is undisputed that immediately before his illness of pemphigus he had been working daily handling meat as a butcher.

There is a difference in medical opinion in the record as to whether his death was due to pemphigus " acutus " or " vulgaris ". But the close juxtaposition of an occupation handling meat and this illness specially prevalent in meat handling seems to us to present an almost classic pattern of an occupational disease within the frame of the statute. In this respect it is suggestive of the situation of the man working at pneumatic drilling in rock containing silica, suffering contemporaneously from silicosis.

This case became bogged down in a procedural and evidentiary morass to which it is, perhaps, easier to apply hindsight after the whole very substantial record is developed, than it was to see it in the course of proof.

But the central and controlling emphasis throughout the case was to attempt to treat a single cut on decedent's hand, testified to by his wife as having occurred May 18, 1948 but nowhere referred to in any hospital record or in any statement made by decedent himself to any doctor, as a specific " accident ". This " accident " was so far removed in time from the earliest professionally observed and identified mild symptoms of pemphigus on June 26, that there was medical opinion, including that of the board's impartial specialist, that the acute symptoms, first professionally observed 10 days later on July 6 could not be related to the " accident " of May 18. This professional opinion was based on the view that if the acute form of the disease had been caused by an organism entering the body on May 18, the manifestation would have been much earlier. The diagnosis of the " vulgaris " form of pemphigus by physicians, in and out of the hospitals, who actually treated him and the period of time between the cut and acute symptoms led the impartial specialist and some other professional witnesses, to eliminate this cut as a cause of the disease.

The board, in rejecting this specific cut as a source of pemphigus, rejected accidental causation entirely. This is consistent with the record; but the rejection of occupational disease is quite another matter; and although the board seems to have rejected this, too, it is neither clear that it intended to have fully considered and rejected the disease as well as the accident, nor that it felt in the light of medical proof in the record it was open to it to consider occupational disease.

On the latter question we would think there is adequate and substantial medical proof to permit the board to find, if it

chooses to find, that the decedent died of an occupational disease peculiarly related to handling meat and arising from his work, without attributing it to any particular accidental occurrence. In such a situation the " disablement " is the " accident " under the statute. (Workmen's Compensation Law, § 38.)

There were, moreover, no sufficient findings made to support the dismissal of the claim and the claim must, in any event, be remitted to the board to make proper findings. One " finding " is as to what is " alleged " as to his accidental cut and as to what the " cause " of his death " was given as ". These are not findings of fact and appellant is entitled to have the board state simply and unequivocally what it finds as facts. That the " weight of the probative medical proof " in the record " indicates " that there was no " causal relationship " is merely a recitation by the board that the doctors held certain opinions and this is not a finding of any fact essential to decision.

The decision should be reversed and the claim remitted to the board for its further consideration of this record, with proof on occupational disease if it deems it necessary, with costs to appellant against the employer and carrier.

Foster, P. J., Coon, Halpern and Gibson, JJ., concur.

Decision reversed and the claim remitted to the board for its further consideration of this record, with proof on occupational disease if it deems it necessary, with costs to appellant against the employer and carrier.